1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOHN ROBERT OTERO,                    No.  2:19cv00381 MCE KJN P

12                   Petitioner,

13        v.                                FINDINGS & RECOMMENDATIONS

14   RALPH M. DIAZ, Secretary of the
     California Department of Corrections and
15   Rehabilitation,

16                   Respondent.

17

18   I.  Introduction

19        Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of

20   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2017 conviction for sexual

21   penetration with a child under ten and continuous sexual abuse.  Petitioner was sentenced to 15

22   years to life plus 12 years in state prison.  Petitioner claims that:  (1) the trial court violated his

23   due process rights by admitting expert testimony concerning Child Sexual Abuse

24   Accommodation Syndrome (CSAAS); (2) trial counsel provided ineffective assistance of counsel

25   for failing to object to the CSAAS  testimony; (3) trial counsel provided ineffective assistance of

26   counsel for failing to object to prosecutorial misconduct; and (4) the trial court's failure to instruct

27   the jury on simple battery deprived petitioner of his due process rights.  After careful review of

28   the record, this court concludes that the petition should be denied.

1

II. <u>Procedural History</u>

On April 7, 2017, a jury found petitioner guilty of sexual penetration with a child under ten (Cal. Pen. Code, § 288.7(b)) and continuous sexual abuse (Cal. Pen. Code, § 288.5(a)).  (ECF No. 10-1 at 167-68.)  On May 15, 2017, petitioner was sentenced to an indeterminate term of 15 years to life plus a consecutive determinate term of 12 years in state prison, for a total of 27 years to life in prison.  (ECF No. 10-1 at 209-12.)

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District.  (ECF Nos. 10-5 & 10-7.)  The Court of Appeal affirmed the conviction on July 3, 2018. (ECF No. 10-8.)

Petitioner filed a petition for review in the California Supreme Court (ECF No. 10-9), which was denied on September 12, 2018 (ECF No. 10-10).

Thereafter, petitioner filed the instant petition on March 4, 2019.  (ECF No. 1.)

III. <u>Facts</u>[1]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> We briefly summarize the facts relevant to the resolution of the claims raised on appeal.  Additional background information is discussed *post*.
>
> Sylvia is the mother the victims, A. and L.  When defendant began dating Sylvia, A. was five years old and L. was three years old. Defendant and Sylvia were together for almost nine years.  During that time, they lived together, became engaged, and had three children.  At the time of trial, A. was 14 years old and L. was 13 years old.
>
> When L. was seven or eight years old, she had a medical condition involving her vagina.  A physician prescribed her cream for the condition and told her not to wear underwear to bed.  Defendant usually applied the cream, which was for external use only, by putting it on his fingers and rubbing it on L.'s vagina for a few seconds while applying the cream.  During the time period when defendant was applying the cream, he would put his hands up the

[1]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in <u>People v. Otero</u>, No. C084833, July 3, 2018, a copy of which was lodged by respondent Lodged Document No. 8 on May 8, 2019.  (<u>See</u> ECF No. 10.)

bottom of L.'s shorts at bedtime to see if she was wearing underwear. When he did so, he would "soft touch" L.'s vagina.

Defendant began sexually abusing A. when she was 12 years old. A. explained that defendant would come into her room in the middle of night, massage her back, and then put his fingers inside her vagina. To make him stop, A. would move away from him. According to A. defendant touched her in the same way "[a]lmost every night" for about a year. However, when asked, she estimated that the touching occurred approximately 20 times.

Sylvia caught defendant in A.'s room "quite a few times" in the middle of the night. When she did so, A. would be uncovered and defendant would be standing next to her body. When asked, defendant claimed he was checking on A. and covering her with blankets.

A. disclosed the sexual abuse to her close friend about a year after it began. Shortly thereafter, Sylvia learned about defendant's conduct, including his sexual abuse of L.

Defendant testified on his own behalf. He said that he viewed A. and L. as his own daughters. He explained that he checked on all of his children in the middle of the night, and that when he went into A.'s room, it was to use her laptop, to close her window, or to pull her covers up. He denied ever putting his fingers inside A.'s vagina. He also claimed he never put his hand near her vagina.

Defendant admitted that he applied cream to the outer area of L.'s vagina about a dozen times. However, he denied that he ever inserted a finger into her vagina.

(People v. Otero, slip op. at *1-2.)

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

3

1    (1) resulted in a decision that was contrary to, or involved an
2    unreasonable application of, clearly established Federal law, as
     determined by the Supreme Court of the United States; or

3    (2) resulted in a decision that was based on an unreasonable
4    determination of the facts in light of the evidence presented in the
     State court proceeding.

5    28 U.S.C. § 2254(d).

6        For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

7    holdings of the United States Supreme Court at the time of the last reasoned state court decision.

8    Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct.

9    38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v.

10   Taylor, 529 U.S. 362, 412 (2000)).  Circuit court precedent "may be persuasive in determining

11   what law is clearly established and whether a state court applied that law unreasonably."  Stanley,

12   633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit

13   precedent may not be "used to refine or sharpen a general principle of Supreme Court

14   jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  Marshall

15   v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per

16   curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted

17   among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as

18   correct."  Id.  Further, where courts of appeals have diverged in their treatment of an issue, it

19   cannot be said that there is "clearly established Federal law" governing that issue.  Carey v.

20   Musladin, 549 U.S. 70, 77 (2006).

21       A state court decision is "contrary to" clearly established federal law if it applies a rule

22   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

23   precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

24   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

25   writ if the state court identifies the correct governing legal principle from the Supreme Court's

26   decisions, but unreasonably applies that principle to the facts of the prisoner's case. [2]  Lockyer v.

27

28   [2]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
     overturned on factual grounds unless it is "objectively unreasonable in light of the evidence

4

1   Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d

2   997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply

3   because that court concludes in its independent judgment that the relevant state-court decision

4   applied clearly established federal law erroneously or incorrectly.  Rather, that application must

5   also be unreasonable."  Williams v. Taylor, 529 U.S. at 411.  See also Schriro v. Landrigan, 550

6   U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its

7   'independent review of the legal question,' is left with a "'firm conviction'" that the state court

8   was "'erroneous'").  "A state court's determination that a claim lacks merit precludes federal

9   habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

10  decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541

11  U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

12  court, a state prisoner must show that the state court's ruling on the claim being presented in

13  federal court was so lacking in justification that there was an error well understood and

14  comprehended in existing law beyond any possibility for fair-minded disagreement."  Richter,

15  562 U.S. at 103.

16      If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

17  court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

18  527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

19  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

20  § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

21  considering de novo the constitutional issues raised").

22      The court looks to the last reasoned state court decision as the basis for the state court

23  judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

24  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

25  previous state court decision, this court may consider both decisions to ascertain the reasoning of

26  the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

27  _____

28  presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
    384 F.3d 628, 638 (9th Cir. 2004)).

1   federal claim has been presented to a state court and the state court has denied relief, it may be

2   presumed that the state court adjudicated the claim on the merits in the absence of any indication

3   or state-law procedural principles to the contrary." Richter, 562 U.S. at 99.  This presumption

4   may be overcome by a showing "there is reason to think some other explanation for the state

5   court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803

6   (1991)).  Similarly, when a state court decision on petitioner's claims rejects some claims but

7   does not expressly address a federal claim, a federal habeas court must presume, subject to

8   rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, 568 U.S. 289,

9   298 (2013) (citing Richter, 562 U.S. at 98).  If a state court fails to adjudicate a component of the

10   petitioner's federal claim, the component is reviewed de novo in federal court.  Wiggins v. Smith,

11   539 U.S. 510, 534 (2003).

12        Where the state court reaches a decision on the merits but provides no reasoning to

13   support its conclusion, a federal habeas court independently reviews the record to determine

14   whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

15   Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

16   review of the constitutional issue, but rather, the only method by which we can determine whether

17   a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853.  Where no

18   reasoned decision is available, the habeas petitioner still has the burden of "showing there was no

19   reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

20        A summary denial is presumed to be a denial on the merits of the petitioner's claims.

21   Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze

22   just what the state court did when it issued a summary denial, the federal court must review the

23   state court record to determine whether there was any "reasonable basis for the state court to deny

24   relief." Richter, 562 U.S. at 98.  This court "must determine what arguments or theories . . . could

25   have supported the state court's decision; and then it must ask whether it is possible fairminded

26   jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

27   decision of [the Supreme] Court." Id. at 101.  The petitioner bears "the burden to demonstrate

28   that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d

6

1    925, 939 (9th Cir. 2013) (quoting <u>Richter</u>, 562 U.S. at 98).

2         When it is clear, however, that a state court has not reached the merits of a petitioner's

3    claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

4    habeas court must review the claim de novo.  <u>Stanley</u>, 633 F.3d at 860; <u>Reynoso v. Giurbino</u>, 462

5    F.3d 1099, 1109 (9th Cir. 2006).

6    V.  <u>Petitioner's Claims</u>

7         *An Initial Clarification*

8         Petitioner's habeas petition is comprised of the form petition and attachments as

9    supporting argument or points and authorities for the four grounds raised therein.  More

10   particularly, the attached portions are arguments asserted in Appellant's Opening Brief filed with

11   the California Court of Appeal, Third Appellate District, in the direct review proceeding before

12   that court.  (<u>Cf.</u> ECF No. 1 at 40-70 to ECF No. 10-5 at 32-78.)  The California Supreme Court

13   denied review (ECF Nos. 10-9 & 10-10); therefore, the Third District Court of Appeal's opinion

14   is the last reasoned opinion addressing the merits of petitioner's claims.

15        This court's task on federal habeas review is to assess whether the state appellate court's

16   determinations of those claims presented were unreasonable or contrary to existing federal law, or

17   whether the state appellate court's factual determinations were unreasonable.  <u>See</u> 28 U.S.C.

18   § 2254(d).  Therefore, the undersigned will presume petitioner is arguing the state appellate court

19   determinations were unreasonable or contrary to existing Supreme Court precedent, thus entitling

20   petitioner to relief in this court.

21        A.  *Due Process Violation: Admission of CSAAS Evidence (Ground 1)*

22        Petitioner claims the trial court violated his federal due process rights when it permitted

23   the introduction of the CSAAS evidence through expert witness testimony regarding false

24   allegations reported by children.  (ECF No. 1 at 5, 40-55.)  Respondent contends petitioner's

25   claim is procedurally defaulted, and, in any event, the state court's adjudication of the claim was

26   reasonable and not contrary to Supreme Court precedent, precluding habeas relief.  (ECF No. 9 at

27   19-29.)

28   //

7

1      The last reasoned rejection of petitioner's first claim is the decision of the California

2  Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court

3  addressed this claim as follows:

*CSAAS Evidence*

I

> Defendant contends the trial court prejudicially erred in admitting CSAAS evidence that exceeded the limits California courts have placed on the use of such evidence. Specifically, he argues the court should not have allowed expert testimony that false reports by children of sexual abuse are "exceedingly rare," and that most reports of sexual abuse by children are true.

> The opinion testimony of an expert witness is admissible if it is: (1) "[r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact"; and (2) "[b]ased on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion." (Evid. Code, § 801, subd. (a).) "'[T]he admissibility of expert opinion is a question of degree. The jury need not be wholly ignorant of the subject matter of the opinion in order to justify its admission.... [E]ven if the jury has some knowledge of the matter, expert opinion may be admitted whenever it would "assist" the jury. It will be excluded only when it would add nothing at all to the jury's common fund of information, i.e., when "the subject of inquiry is one of such common knowledge that men [or women] of ordinary education could reach a conclusion as intelligently as the witness."' [Citation.]" (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1299-1300 (*McAlpin*).)

> CSAAS consists of five emotional behaviors that have been observed in children who have experienced sexual abuse: (1) secrecy; (2) helplessness; (3) entrapment and accommodation; (4) delayed disclosure; and (5) retraction. (See *People v. Bowker* (1988) 203 Cal.App.3d 385, 389 (*Bowker*).) While CSAAS testimony is inadmissible to prove that a molestation occurred, it is nevertheless admissible to rehabilitate a putative victim's credibility when the defense suggests the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with the claim of abuse. (*McAlpin, supra*, 53 Cal.3d at p. 1300.) "'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual

abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.'" (*Id.* at p. 1301.) "CSAAS assumes a molestation has occurred and seeks to describe and explain common reactions of children to the experience. [Citation.] The evidence is admissible solely for the purpose of showing that the victim's reactions as demonstrated by the evidence are not inconsistent with having been molested." (*Bowker*, at p. 394.)

"Because the line between impermissible use of expert testimony to prove the child was abused, and permissible use of such testimony to '"explain the emotional antecedents of abused children's seemingly self-impeaching behavior...."' [citation], is by no means a bright one, the better practice is to limit the expert's testimony to observations concerning the behavior of abused children as a class and to avoid testimony which recites either the facts of the case at trial or obviously similar facts. [Citations.]" (*People v. Gilbert* (1992) 5 Cal.App.4th 1372, 1383-1384 (*Gilbert*).) In addition, CSAAS evidence must be tailored to counter "a specific 'myth' or 'misconception' suggested by the evidence." (*Bowker, supra*, 203 Cal.App.3d at pp. 393-394.) "In the typical criminal case, ... it is the People's burden to identify the myth or misconception the evidence is designed to rebut." (*Id.* at p. 394.) However, the People need not expressly state which evidence is inconsistent with a finding of abuse. (*People v. Patino* (1994) 26 Cal.App.4th 1737, 1744-1745 (*Patino* ).) "It is sufficient if the victim's credibility is placed in issue due to the paradoxical behavior, including a delay in reporting a molestation." (*Ibid.*) Admission of CSAAS evidence "is not error merely because it was introduced as part of the prosecution's case-in-chief rather than in rebuttal. The testimony is pertinent and admissible if an issue has been raised as to the victim's credibility." (*Id.* at p. 1745.)

"[T]he decision of a trial court to admit expert testimony 'will not be disturbed on appeal unless a manifest abuse of discretion is shown.'" (*McAlpin, supra*, 53 Cal.3d at p. 1299.)

Prior to trial, the People filed a motion in limine requesting permission to introduce CSAAS evidence. The People argued that, because the defense would likely attack the credibility of the victims, expert testimony on CSAAS was relevant and admissible to rehabilitate the victims' credibility by disabusing jurors of the following commonly held myths and misconceptions about how child molestation victims react: "1) since the victims did not disclose the molests immediately, some of the described molests did not occur or they are less believable, 2) since the victim[s] did not appear frightened, upset, or traumatized by the defendant's conduct, some of the molests did not occur, 3) since the victim[s] continued to socialize with defendant around the house despite being touched,

some (if not all) of the described molests did not occur, 4) since the victim[s] do not know specifics regarding dates and times of the molests, some of the molests did not occur, 5) the victim[s] should have been able to do something to protect [themselves] from being molested, and 6) since the victim[s] gradually disclosed the abuse and did not come out with each and every detail to the first adult(s), some of the molestations did not occur or are exaggerated." In support of the motion, the People represented that its expert would not testify that defendant "fits a profile" or that his conduct is consistent with a molester. In addition, the People represented that its expert would not vouch for the credibility of the victims, opine that they suffer from a syndrome that would infer the truth of their allegations, or opine that they were actually molested. Instead, the People stated that their expert would testify about the behavior of child abuse victims as a class and explain why victims of such abuse would act in a counterintuitive way, such as delay in reporting the abuse. The People noted that their expert did not interview the victims and did not review any evidence in this case.

Defendant also filed a motion in limine regarding CSAAS evidence. He requested an order excluding or limiting the introduction of CSAAS evidence and "similar theoretical constructs." Specifically, he requested the court exclude all CSAAS evidence because only one component of CSAAS has any scientific support—delayed reporting—and jurors already know that delayed reporting "may be a phenomenon of child molest allegations." Alternatively, defendant requested the People "not be allowed to introduce the equivalent of a profile of a child molester or victim of a molestation under the subterfuge of dispelling numerous myths about child molesters or victims of molest." He also requested that the People be required to specify the alleged myths that their expert intended to testify about, and that the trial court narrowly limit the evidence regarding the specified myths to those myths that are commonly held about child sexual abuse.

At the hearing on the motions, the trial court granted defendant's motion to the extent it sought exclusion of CSAAS evidence that was "the equivalent of a profile of a child molester or victim of a molestation." Before the court addressed the People's motion, defense counsel objected to the introduction of any CSAAS evidence on the ground that such evidence is based on "junk science." Defense counsel argued that no expert is needed because the myths the People were seeking to dispel are not actually myths. The court overruled the objection and indicated that it would allow the People to introduce CSAAS evidence. In so ruling, the court explained that case law required it to allow a qualified CSAAS expert to testify in general terms about CSAAS. The court, however, noted that the People's CSAAS expert was prohibited from giving an opinion as to

whether the victims in this case had been molested, and from suggesting there is a syndrome that predicts when molestation has occurred. The court also noted that it would not allow the prosecutor to give a hypothetical tracking the facts of this case and then ask the expert to give an opinion as to whether a molestation occurred.

After the prosecutor indicated that he intended to elicit testimony from his CSAAS expert on the six myths identified in his motion, the court found that the myths identified by the prosecutor "fit the profile of the myths that the case law [allows]" a CSAAS expert to testify about. The court, however, granted defendant's request that any CSAAS testimony regarding these myths must be "narrowly limited." The court noted that defense counsel could revisit the issue of whether testimony on certain myths was appropriate before the People's CSAAS expert testified.

At a subsequent pretrial hearing before a different judge (i.e., the trial judge), the prosecutor advised the court that he intended to introduce general CSAAS expert testimony on the myths identified in his motion that may affect the credibility of the complaining witnesses. When asked, the prosecutor indicated that he believed that expert testimony regarding each of the myths would be appropriate. The court stated that it intended to admit the evidence so long as the testimony was generic and not case specific. The court, however, noted that it might restrict the testimony on relevance grounds based on the trial testimony.

During the pretrial hearings on the in limine motions, neither party mentioned the admissibility or exclusion of testimony relating to false allegations of sexual abuse by children in general. As such, the trial court did not specifically rule on the admissibility of this evidence.

At trial, Dr. Blake Carmichael, a psychologist, testified as a prosecution expert on CSAAS. He testified that the term CSAAS had been coined by a psychiatrist, Dr. Roland Summit, who published an article in the early 1980's to educate people about the misconceptions commonly held about sexually abused children, including the misconception that children are typically abused by a stranger. He explained that CSAAS evidence is meant to educate people about the behavior of sexually abused children; it is not a diagnostic tool meant to predict whether or not a child was sexually abused. He specifically stated that using CSAAS evidence to determine whether a child had been abused would be improper. He also stated that he was not familiar with the facts or the people involved in this case.

Dr. Carmichael explained that CSAAS has five components: (1) secrecy, (2) helplessness, (3) entrapment and accommodation, (4)

11

delayed and unconvincing disclosure, and (5) recanting or retraction. After Dr. Carmichael testified about these components and discussed the concept of "child suggestibility," the prosecutor asked him whether he was familiar with the literature regarding false allegations of child sexual abuse. When Dr. Carmichael indicated that he was familiar with such literature, the prosecutor asked him to describe what the literature says. Dr. Carmichael responded, in relevant part, as follows: "So if you ... look at kids who are making ... disclosures of being sexually abused, the kid false rates are between zero and two and a half percent are being found to be false. So it is rare for kids to lie about having been sexually abused. And ... those are documented cases where [sexual abuse] has been found to be true. [¶] And so the numbers are very low for ... child-initiated false allegations."

On cross-examination, Dr. Carmichael stated that the child false allegation rates he discussed on direct examination were based on multiple studies. On redirect examination, the prosecutor asked Dr. Carmichael whether it is "generally true in the literature that children just don't make false allegations" of sexual abuse. In response, Dr. Carmichael stated, "It's generally true [that] it is exceedingly rare for a child to make that allegation...." He explained that children are very reluctant to disclose sexual abuse, and that children who have been sexually abused are much more likely to be reluctant to disclose the abuse than to make false allegations of abuse.

When the prosecutor cross-examined defendant's CSAAS expert, Dr. William O'Donohue, he asked about an article Dr. O'Donohue wrote entitled, "Children's Allegations of Sexual Abuse: A Model for Forensic Assessment." The expert admitted that the article concluded that most allegations of child abuse made by children are true.

As an initial matter, we agree with the People that defendant's claim of evidentiary error has been forfeited. Trial counsel did not object to the testimony defendant challenges on appeal. (*People v. Dykes* (2009) 46 Cal.4th 731, 756 ["numerous decisions by this court have established the general rule that trial counsel's failure to object to claimed evidentiary error on the same ground asserted on appeal results in a forfeiture of the issue on appeal"].)

Contrary to defendant's contention, his motion in limine concerning CSAAS evidence did not preserve his evidentiary claim. "[A] motion in limine to exclude evidence is a sufficient manifestation of objection to protect the record on appeal when it satisfies the basic requirements of Evidence Code section 353, i.e.: (1) a specific legal ground for exclusion is advanced and subsequently raised on appeal; (2) the motion is directed to a particular, identifiable body of evidence; and (3) the motion is made at a time before or during trial when the trial judge can determine the evidentiary question in its

appropriate context. When such a motion is made and denied, the
issue is preserved for appeal. On the other hand, if a motion in limine
does not satisfy each of these requirements, a proper objection
satisfying Evidence Code section 353 must be made to preserve the
evidentiary issue for appeal." (*People v. Morris* (1991) 53 Cal.3d
152, 190, disapproved on another ground in *People v. Stansbury*
(1995) 9 Cal.4th 824, 830, fn. 1.)

Here, as noted above, defendant's motion in limine sought an order
excluding or limiting the presentation of CSAAS evidence. The
testimony he now challenges had nothing to do with CSAAS. (See
*Gilbert, supra*, 5 Cal.App.4th at p. 1386 [expert's testimony that
children are more credible than adults in reporting sexual abuse did
not fall within scope of rules that apply to CSAAS evidence].)
Evidence on the syndrome addresses a child's common reactions to
sexual abuse, and is admissible to disabuse jurors of any myths or
misconceptions he or she might have regarding those reactions.
(*Patino, supra*, 26 Cal.App.4th at p. 1744; *People v. Housley* (1992)
6 Cal.App.4th 947, 955.) The expert testimony regarding false
allegations of child abuse was not offered to explain a reaction that
might appear inconsistent with abuse that actually occurred but rather
addressed the likelihood that a claim of abuse was true.

Accordingly, because defendant's motion in limine was not directed
at the particular evidence he now claims was improperly admitted,
the motion did not preserve the evidentiary issue for appeal.

(People v. Otero, slip op. at *2-5.)

*Legal Standards Applicable to the Claim*

A state court's admission of evidence under state evidentiary law will form the basis for
federal habeas relief only where the evidentiary ruling "so fatally infected the proceedings as to
render them fundamentally unfair" in violation a petitioner's due process rights. Jammal v. Van
de Kamp, 926 F.2d 918, 919 (9th Cir. 1991). "[F]ailure to comply with the state's rules of
evidence is neither a necessary nor a sufficient basis for granting habeas relief." Id.

The United States Supreme Court has "defined the category of infractions that violate
'fundamental fairness' very narrowly," Dowling v. United States, 493 U.S. 342, 352 (1990), and
"has made very few rulings regarding the admission of evidence as a violation of due process."
Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009).[3]  It has opted not to hold that

---

[3] In Holley, the petitioner was charged with multiple felony counts of lewd and lascivious acts on

13

1   evidence of other crimes or bad acts "so infused the trial with unfairness as to deny due process of

2   law." Estelle v. McGuire, 502 U.S. at 75 & n.5 (noting that the Court "express[ed] no opinion on

3   whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes'

4   evidence to show propensity to commit a charged crime"). Moreover, the Supreme Court "has

5   not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes

6   a due process violation sufficient to warrant issuance of the writ." Holley, 568 F.3d at 1101

7   (citing Carey v. Musladin, 549 U.S. at 77). In the absence of clearly established law that

8   admission of even overtly prejudicial evidence constitutes a due process violation, the court

9   cannot conclude that the state court's ruling was an "unreasonable application." Id.; see also

10  Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008) (holding that because the Supreme

11  Court has expressly reserved the question of whether using evidence of a defendant's past crimes

12  to show that he has a propensity for criminal activity could ever violate due process, the state

13  court did not unreasonably apply clearly established law in determining that the admission of

14  defendant's criminal history did not violate due process). A federal court is "without power" to

15  grant a habeas petition based solely on the admission of evidence. Id.

16          Even setting aside the issue of clearly established federal law, "[a] habeas petitioner bears

17  a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v.

18  Brown, 404 F.3d 1159, 1172 (9th Cir. 2005), as amended, 421 F.3d 1154 (9th Cir. 2005). Again,

19  "'[t]he admission of evidence does not provide a basis for habeas relief unless it rendered the trial

20  fundamentally unfair in violation of due process.'" Holley, 568 F.3d at 1101. "Only if there are

21  no permissible inferences the jury may draw from evidence can its admission violate due

22  process." Alcala v. Woodford, 334 F.3d 862, 887 (9th Cir. 2003) (emphasis in original); Houston

23  v. Roe, 177 F.3d 901, 910 n.6 (9th Cir. 1999). "Even then, the evidence must 'be of such quality

24  _____

25  a child under fourteen; he challenged the trial court's admission of a lewd matchbook and several
    sexually explicit magazines seized from his bedroom. Holley, 568 F.3d at 1096. The Ninth
26  Circuit denied habeas relief because the Supreme Court "has not yet made a clear ruling that
    admission of irrelevant or overtly prejudicial evidence constitutes a due process violation
27  sufficient to warrant issuance of the writ." Id. at 1101. "Absent such 'clearly established Federal
    law,'" the Ninth Circuit in Holley could not "conclude that the state court's ruling was an
28  unreasonable application" of federal precedent. Id. (quoting Carey v. Musladin, 549 U.S. at 77).

1   as necessarily prevents a fair trial.'"  Jammal v. Van de Kamp, 926 F.2d at 920 (citation omitted).

2   That can only occur if the admission of the evidence had a "'substantial and injurious effect or

3   influence in determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)

4   (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

5               *Analysis*

6         Initially, the undersigned notes federal courts may reach the merits of habeas petitions,

7   despite an asserted procedural bar, so long as they are clearly not meritorious.  Franklin v.

8   Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (citing Lambrix v. Singletary, 520 U.S. 518, 525

9   (1997)).  Because the instant claim is without merit, the undersigned will not reach the procedural

10  bar issue.  Second, the undersigned notes the California Court of Appeal's recitation of facts,

11  including procedural background and testimonial summaries, is accurate and fully supported by

12  this record.  28 U.S.C. § 2254(d)(2).

13        California law admits CSAAS evidence for certain limited purposes with proper

14  admonishments to the jury regarding the limits of such evidence.  See, e.g., People v. Patino, 26

15  Cal.App.4th 1737, 1744-1746 (1994).  Moreover, the Ninth Circuit has noted that expert

16  testimony about CSAAS has been admitted "in federal child-sexual-abuse trials, when the

17  testimony concerns general characteristics of victims and is not used to opine that a specific child

18  is telling the truth."  Brodit v. Cambra, 350 F.3d 985, 991 (9th Cir. 2003) (citing United States v.

19  Bighead, 128 F.3d 1329 (9th Cir. 1997) (per curiam) and United States v. Antone, 981 F.2d 1059

20  (9th Cir. 1992)).  The Ninth Circuit has concluded that this type of general testimony "merely

21  assist[s] the trier of fact in understanding the evidence; it [does] not improperly bolster the

22  particular testimony of the child victim."  Antone, 981 F.2d at 1062.

23        In Brodit, the Ninth Circuit found that where the trial court instructed the jury that expert

24  testimony concerning CSAAS could not be considered as proof that the sexual abuse had

25  occurred, petitioner's due process rights were not violated by the admission of the testimony.

26  Brodit, 350 F.3d at 991.  Here, as in Brodit, Dr. Carmichael's testimony was not admitted as

27  proof of the ultimate question of petitioner's guilt (ECF No. 10-4 at 26), nor did Dr. O'Donohue's

28  testimony speaking to the issue (ECF No. 10-4 at 85), and the jury was given a limiting

15

1   instruction prior to commencement of deliberations (ECF No. 10-4 at 123-124).  It is presumed

2   the jury followed all instructions.  Weeks v. Angelone, 528 U.S. 225, 234 (2000).  Under the

3   circumstances presented here, the admission of Dr. Carmichael's expert testimony, as well as that

4   of defense expert Dr. O'Donohue, regarding CSAAS did not violate petitioner's right to due

5   process.  Brodit, 350 F.3d at 991.

6        The undersigned finds the state court's determination that the specific testimony of which

7   petitioner complains is not CSAAS evidence to be reasonable.  The testimony of both physician

8   experts concerning false allegations was a separate subject covered during their respective

9   testimonies.  (ECF No. 10-4 at 9-38 [see Carmichael: CSAAS at 12-22; false allegations at 25-26,

10  29-30, 37-38], 69-86 [O'Donohue: CSAAS at 72-81; false allegations at 84-85].)  Hence, the

11  California Court of Appeal's finding that the testimony "had nothing to do with CSAAS" was not

12  unreasonable.

13       This record reveals persuasive testimony from victims Angelica and Lily, as well as their

14  mother Sylvia.  (ECF No. 10-3 at 84-108 [Angelica], 108-128 [Lily], 137-169 [Sylvia].)  That

15  testimony is corroborated in part by the testimony of Karli Rainwater (ECF No. 10-3 at 130-137),

16  Ana Ruiz (ECF No. 10-3 181-184), and Detective Sean Baxter (ECF No. 10-3 at 171-172 & ECF

17  No. 10-4 at 9).  Admission of the evidence complained of did not "so fatally infected the

18  proceedings as to render them fundamentally unfair" in violation a petitioner's due process rights.

19  Jammal v. Van de Kamp, 926 F.2d at 919.  The testimonial evidence of either expert witness did

20  not have a "'substantial and injurious effect or influence in determining the jury's verdict.'"

21  Brecht v. Abrahamson, 507 U.S. at 623.  This case did turn on credibility – did the jury believe

22  Angelica and Lily, or did it believe petitioner.[4]  However, it is significant that the testimony of the

23  _____

24  [4] After no more than an hour and a half of deliberations, the jury retired for the evening on April
    6, 2017.  (ECF No. 10-4 at 126.)  The following morning, at 9:00 a.m., deliberations resumed.

25  (ECF No. 10-4 at 130.)  At 9:56 a.m., the jury sent a note requesting readback of the testimony of
    Angelica, Lily and Sylvia.  (ECF No. 10-1 at 171 & ECF No. 10-4 at 130.)  Readback of the

26  requested testimony occurred between 10:09 a.m. and 11:19 a.m.  (ECF No. 10-4 at 130.)
    Deliberation resumed for approximately forty minutes, before the jury took its lunch recess.

27  (ECF No. 10-4 at 130.)  After returning from lunch, less than one half hour later, the jury advised
    the trial court it had reached a verdict.  (ECF No. 10-1 at 169-170 & ECF No. 10-4 at 130.)

28  Following the requested readback, the jury reached its verdict in less than one hour.

1    expert witnesses did not involve any information specific to the facts of, or victims in, this case.

2    Neither expert witness's testimony addressed the issue of petitioner's guilt.  Therefore, even

3    assuming error, without so finding, admission of the testimony of Drs. Carmichael and

4    O'Donohue did not have a substantial and injurious effect or influence on the jury's verdict.

5            Even viewing the testimony about false allegations as CSAAS evidence, the state courts'

6    rejection of petitioner's argument that the trial court violated his right to due process in allowing

7    the admission of expert evidence about CSAAS does not support the granting of federal habeas

8    relief under AEDPA.  There is no "clearly established federal law" that the admission of CSAAS

9    evidence in a child molestation case violates the due process clause.  The state court's decision

10   was not contrary to, or an unreasonable application of, clearly established Supreme Court

11   authority.  Nor was the state court's finding based on an unreasonable application of the facts.  28

12   U.S.C. § 2254(d).  The state court's determination was not "so lacking in justification that there

13   was an error well understood and comprehended in existing law beyond any possibility for

14   fairminded disagreement."  Richter, 562 U.S. at 103.  Thus, the undersigned recommends the

15   claim asserted in ground one be denied.

16           B.  *Ineffective Assistance of Counsel for a Failure to Object (Grounds 2 & 3)*

17           In ground two, petitioner claims that defense counsel provided ineffective assistance of

18   counsel for a failure to object to the prosecution's expert witness testimony "that false allegations

19   of child sexual abuse were 'exceedingly rare' or Dr. O'Donohue's testimony on cross-

20   examination that 'most' such allegations were true."  (ECF No. 1 at 7, 55-60.)  Petitioner further

21   argues, in ground three of the petition, that counsel was ineffective for failing to object to the

22   prosecutor's misconduct in eliciting the aforementioned testimony from Dr. Carmichael that was

23   contrary to the trial court's earlier ruling on CSAAS.  (ECF No. 1 at 8, 60-63.)  Respondent

24   maintains the state appellate court's denial of this claim was not an unreasonable application of

25   Supreme Court precedent.  (ECF No. 9 at 29-35.)

26           The last reasoned rejection of petitioner's claim is the decision of the California Court of

27   Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

28   this claim as follows:

17

Defendant's alternative argument that he received ineffective assistance of counsel lacks merit. He argues that trial counsel should have objected to the challenged testimony on the grounds that it exceeded the scope of permissible CSAAS evidence and the bounds of the trial court's pretrial evidentiary rulings. He further argues that trial counsel should have objected to the testimony on the ground that the evidence was inadmissible under Evidence Code section 352, and because the prosecutor engaged in misconduct by eliciting testimony outside the scope of what he represented his expert would testify to.

A defendant who contends he received ineffective assistance of counsel at trial must establish both that his counsel's performance was deficient when measured against the standard of a reasonably competent professional and that in the absence of his counsel's failings, a more favorable outcome was reasonably probable. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].) "[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance." (*People v. Hillhouse* (2002) 27 Cal.4th 469, 502.) "An attorney may well have a reasonable tactical reason for declining to object, and '"[i]f the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation."'" (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1312-1313.)

On the record before us, we conclude defendant has failed to demonstrate ineffective assistance of counsel. Defendant has not shown that trial counsel did not have a rational tactical purpose for not objecting to the challenged testimony. Here, we discern several possible reasons why trial counsel may have decided not to object to the expert testimony regarding false allegations of child abuse. First, defense counsel could have reasonably concluded that the challenged testimony was not CSAAS evidence and therefore did not run afoul of the trial court's pretrial evidentiary rulings. Second, defense counsel could have reasonably concluded that the testimony was relevant to the victims' credibility, constituted proper expert testimony, and was not unduly prejudicial under Evidence Code section 352. The record shows that the limited testimony on this issue was within the scope of each expert's expertise on child sexual abuse. The challenged testimony was based on research on false allegations of sexual abuse made by children. Third, defense counsel could have reasonably concluded that the testimony supported defendant's theory of the case, as the evidence lent support to the argument that the victims were not telling the truth. Neither expert testified that children never lie about sexual abuse. Instead, Dr. Carmichael testified that false allegations by children are "exceedingly rare,"

18

1

2

> while Dr. O'Donohue testified that most allegations of sexual abuse by children are true. Contrary to defendant's contention, this testimony did not vouch for the victims' credibility. The testimony related to false allegations by children in general. Neither expert expressed an opinion about whether the victims in this case were telling the truth or had been sexually abused.

3

4

5

> Under the circumstances, we cannot conclude defense counsel's decision not to object to the evidence fell below an objective standard of reasonableness under prevailing professional norms.

6

7

8

(People v. Otero, slip op. at *5-6.)

9

*Legal Standards Applicable to the Claims*

10         To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his

11  trial counsel's performance "fell below an objective standard of reasonableness" and that "there is

12  a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

13  would have been different." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).

14         Under the first prong of the Strickland test, a petitioner must show that counsel's conduct

15  failed to meet an objective standard of reasonableness. Strickland, 466 U.S. at 687. There is "a

16  'strong presumption' that counsel's representation was within the 'wide range' of reasonable

17  professional assistance." Harrington v. Richter, 562 U.S. at 104 (quoting Strickland, 466 U.S. at

18  689). Petitioner must rebut this presumption by demonstrating that his counsel's performance

19  was unreasonable under prevailing professional norms and was not the product of "sound trial

20  strategy." Strickland, 466 U.S. at 688-89. Judicial scrutiny of defense counsel's performance is

21  "highly deferential," and thus the court must evaluate counsel's conduct from her perspective at

22  the time it occurred, without the benefit of hindsight. Id. at 689. "[S]trategic choices made after

23  thorough investigation of law and facts relevant to plausible options are virtually

24  unchallengeable." Strickland, 466 U.S. at 690.

25         The second prong of the Strickland test requires a petitioner to show that counsel's

26  conduct prejudiced him. Strickland, 466 U.S. at 691-92. Prejudice is found where "there is a

27  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

28  would have been different." Id. at 694. A reasonable probability is one "sufficient to undermine

1   confidence in the outcome."  Id. at 693.  "This does not require a showing that counsel's actions

2   'more likely than not altered the outcome,' but the difference between Strickland's prejudice

3   standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'"

4   Richter, 562 U.S. at 112 (quoting Strickland, 466 U.S. at 693).  "The likelihood of a different

5   result must be substantial, not just conceivable."  Id.

6        A criminal defendant's due process rights are violated when a prosecutor's misconduct

7   renders a trial fundamentally unfair.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  Claims of

8   prosecutorial misconduct are reviewed "'on the merits, examining the entire proceedings to

9   determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the

10  resulting conviction a denial of due process.'"  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir.

11  1995) (citation omitted); see also Greer v. Miller, 483 U.S. 756, 765 (1987); Donnelly v.

12  DeChristoforo, 416 U.S. 637, 643 (1974); Towery v. Schriro, 641 F.3d 300, 306 (9th Cir. 2010).

13  Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial

14  misconduct resulted in actual prejudice.  Darden, 477 U.S. at 181-83; see also Towery, 641 F.3d

15  at 307 ("When a state court has found a constitutional error to be harmless beyond a reasonable

16  doubt, a federal court may not grant habeas relief unless the state court's determination is

17  objectively unreasonable").  Prosecutorial misconduct violates due process when it has a

18  substantial and injurious effect or influence in determining the jury's verdict.  Ortiz-Sandoval v.

19  Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

20              *Analysis*

21       CSAAS evidence was admissible under California law, a determination which is

22  unreviewable in this court.  See Estelle, 502 U.S. at 67-68; Bradshaw v. Richey, 546 U.S. 74, 76

23  (2005).  Accordingly, any claim that defense counsel failed to object to CSAAS evidence did not

24  constitute unreasonable performance.  Moreover, because any objection would have been

25  overruled, the failure to object cannot have affected the outcome.  See Kimmelman v. Morrison,

26  477 U.S. 365, 382 (1986) (to prevail under Strickland, petitioner must establish that foregone

27  motion would have been meritorious).

28  //

20

1       As previously noted, the state appellate court's finding that the testimony by both expert

2 witnesses concerning false allegations was not CSAAS evidence was not unreasonable.  In any

3 event, like the CSAAS evidence, the information imparted concerning false allegations in child

4 sexual abuse cases did not speak to the facts or victims in this case.  The information was generic

5 and presented to the jury in that manner.  (ECF No. 10-4 at 25-26, 84-86.)

6       It was not unreasonable for the state appellate court to conclude there may have been

7 tactical reasons for defense counsel's election not to object to testimony from the experts

8 concerning false allegations.  From this record, it was not unreasonable to determine that defense

9 counsel may have viewed the testimony concerning CSAAS evidence and false allegations

10 concerning sexual abuse to be separate, and thus so viewed, the testimony elicited was not

11 violative of the rulings made in limine or at time of trial.  Significantly too, because the false

12 allegations testimony was not specific to the victims here or the facts of this case, defense counsel

13 could have reasonably concluded an objection would have been futile or lacking in merit.  Jones

14 v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing Boag v. Raines, 769 F.2d 1341, 1344

15 (9th Cir. 1985)). Defense counsel cross-examined Dr. Carmichael about false allegations.  And

16 when defense expert Dr. O'Donohue was asked about an article he had authored wherein he

17 concluded that "most allegations of child sexual abuse are true," during redirect examination,

18 defense counsel confirmed that O'Donohue was speaking in general terms by inquiring of the

19 expert whether he knew "anything about the facts" of this case, whether O'Donohue knew "any

20 of the parties," and whether he had knowledge of the allegation in this case; the doctor answered

21 negatively to each question.  (ECF No. 10-4 at 85-86.)  In that manner, defense counsel

22 emphasized the generality of both experts' testimony.  Such a tactic is accorded deference by this

23 court.  At a minimum, fairminded jurists could disagree as to counsel's performance.  Richter,

24 562 U.S. at 101.

25       Next, the state appellate court's finding that there was no prosecutorial misconduct as a

26 basis for defense counsel to object to the testimony in question was a reasonable one.  The

27 prosecutor did not exceed the bounds of the limitations set concerning the expert testimony.

28 Johnson v. Sublett, 63 F.3d at 929.  Neither the CSAAS evidence nor the evidence proffered

1    regarding false allegations in child sexual abuse cases was specific to this case or these victims.

2    Greer v. Miller, 483 U.S. at 765.  Defense counsel was not required to object where such an

3    objection lacked merit.  Jones v. Smith, 231 F.3d at 1239 n.8.  Where the testimony was generic

4    and not specific, it would not have been found to be more prejudicial than probative.  Id. at  1239

5    n.8.  And again, fairminded jurists could disagree on the issue, precluding relief in this court.

6    Richter, 562 U.S. at 101.

7              Further, there is no reasonable probability of a different outcome here even had the

8    evidence complained of been successfully objected to.  The jury was tasked with determining

9    whether it believed Angelica and Lily, or whether it believed petitioner.  Angelica and Lily's

10   testimony was concise and compelling.  (ECF No. 10-3 at 84-108 [Angelica], 108-28 [Lily].)

11   Petitioner testified to the reasons he would enter the bathroom while Angelica was showering,

12   both girls' bedrooms while they were dressing, Angelica's bedroom in the middle of the night,

13   and how and why he applied the cream prescribed for Lily.  Petitioner denied undressing

14   Angelica, putting his hand or finger near or in her vagina, denied inserting a finger into Lily's

15   vagina, or taking any action in order to satisfy a sexual interest or purpose as to either girl.  (ECF

16   No. 10-4 at 40-68.)  On cross-examination, petitioner agreed that if he were telling the truth, that

17   meant Angelica, Lily, Sylvia, and Matt, were all lying.  (ECF No. 10-4 at 64-65.)   While a

18   different result may be conceivable on this record, it is not in any way substantial.  Richter, 562

19   U.S. at 112.

20             In sum, the state court's adjudication of this claim was not based on an unreasonable

21   application of the facts.  28 U.S.C. § 2254(d)(2).  Nor was the state court's adjudication of these

22   claims based upon an unreasonable application of, or contrary to, Supreme Court precedent.  28

23   U.S.C. § 2254(d)(1).  The state court's determination regarding petitioner's ineffective assistance

24   of counsel claims was not "so lacking in justification that there was an error well understood and

25   comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 562

26   U.S. at 103.  Therefore, the undersigned recommends grounds two and three of the petition be

27   denied.

28   //

1    C.  *Failure to Instruct the Jury Regarding Simple Battery (Ground 4)*

2         Petitioner's final claim is that the trial court's failure to instruct the jury regarding the

3    crime of simple battery constituted a denial of his rights to due process.  (ECF No. 1 at 10, 63-

4    71.)  Respondent asserts the state appellate court's determination was reasonable and not contrary

5    to Supreme Court precedent, barring relief.  (ECF No. 9 at 36-40.)

6         The last reasoned rejection of petitioner's claim is the decision of the California Court of

7    Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

8    this claim as follows:

9
10        Defendant contends the trial court prejudicially erred in failing to
          instruct the jury, sua sponte, that simple battery is a lesser included
          offense of sexual penetration with a child 10 years of age or younger.

11
12        "A trial court has a sua sponte duty to 'instruct on a lesser offense
          necessarily included in the charged offense if there is substantial
          evidence the defendant is guilty only of the lesser.' [Citation.]
13        Substantial evidence in this context is evidence from which a
          reasonable jury could conclude that the defendant committed the
14        lesser, but not the greater, offense. [Citation.] 'The rule's purpose is
          ... to assure, in the interest of justice, the most accurate possible
15        verdict encompassed by the charge and supported by the evidence.'
          [Citation.] In light of this purpose, the court need instruct the jury on
16        a lesser included offense only '[w]hen there is substantial evidence
          that an element of the charged offense is missing, but that the accused
17        is guilty of' the lesser offense. [Citation.]" (*People v. Shockley*
          (2013) 58 Cal.4th 400, 403-404 (*Shockley*).) Consequently, an
18        instruction on a lesser included offense is not required "when the
          evidence shows that the defendant is either guilty of the crime
19        charged or not guilty of any crime." (*People v. Barton* (1995) 12
          Cal.4th 186, 196, fn. 5.)

20        "On appeal, we review independently whether the trial court erred in
          failing to instruct on a lesser included offense." (*People v. Booker*
21        (2011) 51 Cal.4th 141, 181.) In a noncapital case, failure to instruct
          on a lesser included offense "does not require reversal 'unless an
22        examination of the entire record establishes a reasonable probability
          that the error affected the outcome.' [Citations.]" (*People v. Wyatt*
23        (2012) 55 Cal.4th 694, 698; see also *People v. Breverman* (1998) 19
          Cal.4th 142, 165, 178 [reversal for instructional error requires a
24        showing of prejudice under *People v. Watson* (1956) 46 Cal.2d 818,
          836].)
25
26        "To determine if an offense is lesser and necessarily included in
          another offense for this purpose, we apply either the elements test or
27        the accusatory pleading test. 'Under the elements test, if the statutory
          elements of the greater offense include all of the statutory elements
          of the lesser offense, the latter is necessarily included in the former.
28        Under the accusatory pleading test, if the facts actually alleged in the

                                    23

accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former.' [Citation.]" (*Shockley, supra*, 58 Cal.4th at p. 404.) Here, because the second amended information charging defendant with sexual penetration of a child 10 years of age or younger simply tracked the language of section 288.7 without providing additional factual allegations, we focus on the statutory elements test. (*Shockley*, at p. 404, citing *People v. Anderson* (1975) 15 Cal.3d 806, 809 [where the accusatory pleading is couched in terms of the statutory definition of the greater crime and no additional factual allegations are included therein, the courts necessarily must rely solely upon the statutory definition].)

Sexual penetration with a child 10 years old or younger is defined in section 288.7, subdivision (b). That statute incorporates the definition of "sexual penetration" set forth in section 289. (§ 288.7, subd. (b).) "'Sexual penetration' is the act of causing the penetration, however slight, of the genital or anal opening of any person or causing another person to so penetrate the defendant's or another person's genital or anal opening for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." (§ 289, subd. (k)(1).)

Simple battery is defined as "any willful and unlawful use of force or violence upon the person of another." (§ 242.) "'Any harmful or offensive touching constitutes an unlawful use of force or violence' under this statute. [Citations.] 'It has long been established that "the least touching" may constitute battery. In other words, force against the person is enough; it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave a mark.' [Citations.]" (*Shockley, supra*, 58 Cal.4th at pp. 404-405.) "Therefore, '[o]nly a slight unprivileged touching is needed to satisfy the force requirement of a criminal battery.'" (*People v. Dealba* (2015) 242 Cal.App.4th 1142, 1149.) The touching can be done indirectly by causing an object or someone else to touch the person. (*Id.* at p. 1150; see CALCRIM No. 960.)

We need not decide whether simple battery is a lesser included offense of sexual penetration with a child 10 years old or younger. Even assuming that it is, we find no instructional error. On this record, there was no substantial evidence supporting a jury determination that defendant was in fact guilty of simple battery. The sexual penetration charge was based on defendant inserting his finger into L.'s vagina on one occasion. The defense theory was that defendant never inserted a finger into L.'s vagina. Instead, defendant claimed that he only applied cream to the outer area of L.'s vagina. If the jury believed defendant's testimony that he was merely applying the cream as instructed by L.'s physician, it would have been bound to acquit, as such conduct does not amount to a battery. (See *People v. Chenelle* (2016) 4 Cal.App.5th 1255, 1265 [touching a child's or dependent adult's penis in the course of normal caretaking does not amount to a battery].)

In any event, any error in failing to instruct on simple battery was harmless. "Error in failing to instruct the jury on a lesser included offense is harmless when the jury necessarily decides the factual

1    questions posed by the omitted instructions adversely to [the]
2    defendant under other properly given instructions." (*People v. Lewis*
     (2001) 25 Cal.4th 610, 646.) Here, the sexual penetration charge
3    presented a clear credibility contest between L. and defendant. L.'s
     testimony was that defendant inserted his finger into her vagina on
4    one occasion for a few seconds while he was applying cream to her
     vagina. Defendant, on the other hand, denied ever putting his finger
5    inside her vagina. In finding defendant guilty of the sexual
     penetration charge, the jury necessarily believed L. Had the jury
6    believed defendant, it would have returned a verdict of not guilty.
     Under *Watson*, there is no reasonable probability that defendant
7    would have obtained a more favorable outcome had the trial court
     instructed the jury on simple battery. We see no possibility that the
8    jury would have found defendant's story more believable had the trial
     court instructed on that offense.

9    (<u>People v. Otero</u>, <u>slip op.</u> at *6-8.)

10   *Legal Standards Applicable to Ground Four*

11   "[T]he failure...to instruct on lesser included offenses in a non-capital case does not

12   present a federal constitutional question." <u>Windham v. Merkle</u>, 163 F.3d 1092, 1105–06 (9th Cir.

13   1998). There is no Supreme Court authority holding that the Constitution entitles a defendant in a

14   non-capital case to jury instructions on lesser included offenses. <u>Beck v. Alabama</u>, 447 U.S. 625,

15   638 n.14 (1980); <u>Howell v. Mississippi</u>, 543 U.S. 440, 445 (2005) (suggesting <u>Beck</u> does not

16   apply in non-capital cases). Thus, a state court could not have applied Supreme Court authority

17   unreasonably in denying a claim based on the failure to give a lesser included offense instruction

18   in a non-capital case. 28 U.S.C. § 2254(d); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122 (2009)

19   ("[T]his Court has held on numerous occasions that it is not an unreasonable application of

20   clearly established Federal law for a state court to decline to apply a specific legal rule that has

21   not been squarely established by this Court" [internal quotation omitted]); <u>see also</u> <u>United States</u>

22   <u>v. Rivera-Alonzo</u>, 584 F.3d 829, 834 n.3 (9th Cir. 2009) ("In the context of a habeas corpus

23   review of a state court conviction, we have stated that there is no clearly established federal

24   constitutional right to lesser included instructions in non-capital cases"). Nonetheless, despite

25   these holdings, the Ninth Circuit has stated, without deciding, that a defendant in a non-capital

26   case may be entitled to lesser included offense instructions if those instructions encompass the

27   defendant's theory of defense and are supported by substantial evidence. <u>Solis v. Garcia</u>, 219

28   F.3d 922, 929-30 (9th Cir. 2000).

25

1    Claims of error in state jury instructions are generally matters of state law and thus do not

2    usually invoke a constitutional question.  See Gilmore v. Taylor, 508 U.S. 333, 343 (1993).  And,

3    the federal court is bound by a state appellate court's interpretation of California state law.  See

4    Waddington v. Sarausad, 555 U.S. 179, 192 n.5 (2009) ("we have repeatedly held that it is not the

5    province of a federal habeas court to reexamine state-court determinations on state law

6    questions").

7    To merit federal habeas relief when an allegedly erroneous jury instruction is given, or an

8    instruction is omitted, a petitioner must show that the ailing instruction by itself so infected the

9    entire trial that the resulting conviction violates due process.  See Estelle v. McGuire, 502 U.S. at

10   71-72; Henderson v. Kibbe, 431 U.S. 145, 155 (1977); see also Dunckhurst v. Deeds, 859 F.2d

11   110, 114 (9th Cir. 1988) (state court's failure to give jury instruction "does not alone raise a

12   ground cognizable in a federal habeas corpus proceeding").  A habeas petitioner is not entitled to

13   relief unless the instructional error "'had substantial and injurious effect or influence in

14   determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S. at 637.  In other words, the

15   error must have resulted in "actual prejudice."  Id.

16                    *Analysis*

17   First, in the absence of Supreme Court authority holding that a defendant in a non-capital

18   case has a constitutional right to jury instructions on a lesser-included offense, it cannot be said

19   that the California Court of Appeal's rejection of petitioner's claim was contrary to or involved an

20   unreasonable application of clearly established Supreme Court law.  See Woods v. Donald, 575

21   U.S. 312, 317 (2015) ("Because none of [the Supreme Court's] cases confront 'the specific

22   question presented by this case,' the state court's decision could not be 'contrary to' any

23   [Supreme Court] holding" [citation omitted]) (per curiam); Windham v. Merkle, 163 F.3d at

24   1105-06.

25   Moreover, even if the trial court's failure to instruct the jury on a lesser included offense

26   did raise a constitutional issue, the state court's determination that the evidence presented at

27   petitioner's trial simply did not support a battery instruction was not unreasonable.  California law

28   requires a trial court to instruct on lesser included offenses where substantial evidence supports

26

1    the lesser charge.  People v. Waidla, 22 Cal.4th 690, 733 (2000).  The duty to instruct on a lesser

2    included offense only arises if substantial evidence "would absolve [the] defendant from guilt of

3    the greater offense but not the lesser" offense.  Id. at 733 (internal citations omitted).  On the

4    other hand, the existence of "any evidence, no matter how weak," will not justify instructions on a

5    lesser included offense.  People v. Breverman, 19 Cal.4th 142, 162 (1998).

6            Count two alleged a violation of California Penal Code section 288.7(b), to wit:  "Any

7    person 18 years of age or older who engages in oral copulation or sexual penetration, as defined

8    in Section 289, with a child who is 10 years of age or younger is guilty of a felony and shall be

9    punished by imprisonment in the state prison for a term of 15 years to life."

10          The Third Appellate District's opinion is accurate: the charge involving Lily was based

11    upon the allegation that petitioner inserted his finger into Lily's vagina when applying a

12    prescribed medication to the affected area.  (ECF No. 10-1 at 109 [Second Amended Information

13    filed 3/27/17; count two]; ECF No. 10-3 at 83 [count two read to jury]; ECF No. 10-3 at 111

14    [Lily's testimony that petitioner "touched" her vagina], 114 ["soft touch" to Lily's vagina via pant

15    leg], 116 [petitioner put cream on two fingers, "put it on the inside of" Lily's vagina], 117 [Lily

16    believes petitioner put his finger inside her vagina "just the once"], 118 [Lily thinks it was only

17    once, but was "not very sure"], 120 [petitioner did not say anything to Lily when he put his finger

18    inside her vagina], 121 [petitioner's finger inside Lily's vagina for a "few seconds"].)

19          When petitioner testified in his own defense, he denied touching Lily inappropriately:

20    petitioner acknowledged applying the prescription medication to Lily's vagina about a dozen

21    times (ECF No. 10-4 at 53), he did not believe it was inappropriate because Lily was his daughter

22    (ECF No. 10-4 at 54), petitioner denied leaning against the closed door on those occasions when

23    he applied the medication (ECF No. 10-4 at 54-55), he applied the medication with a "gloved

24    hand" to Lily's "outer vagina area" (ECF No. 10-4 at 55), and denied applying the medication

25    "like a dozen plus" times to "satisfy some sexual desire" (ECF No. 10-4 at 55); petitioner did not

26    know why Lily would accuse him (ECF No. 10-4 at 55-56), and replied "never" to questions of

27    whether he inserted "one of his fingers" into Lily's vagina, whether it could have been accidental

28    or perceived as such by Lily (ECF No. 10-4 at 56); petitioner denied doing what Angelica and

1    Lily accused him of doing, denied touching either girl in a "sexual manner," and had no "sexual

2    interest" in either girl (ECF No. 10-4 at 64.)[5]

3        It was reasonable for the state court to conclude that there was no substantial evidence to

4    support a jury determination of simple battery, nor was it unreasonable for the state court to

5    determine that even if it assumed error, any error was harmless.  That is so because that court's

6    determination that this case presented a credibility contest was accurate: if the jury believed Lily,

7    petitioner was guilty of sexual penetration; if the jury did not believe Lily, petitioner would have

8    to have been acquitted of the crime.  People v. Chenelle, 4 Cal.App.5th 1255, 1265 (2016) ("Even

9    if the jury believed defendant's statement to Frazier he was merely fixing T.P.'s pants, no battery

10   instruction was required, because the jury would have been bound to acquit.  Accidentally

11   touching a child's or a dependent adult's penis while adjusting his or her pants in the course of

12   normal caretaking is not a crime.  Such innocent conduct does not amount to a battery, i.e., an

13   intentional touching done in a harmful or offensive manner").

14        Finally, even if the failure to instruct on the lesser-included offense was erroneous,

15   petitioner cannot demonstrate that the error had a substantial or injurious effect in determining the

16

17 [5] The undersigned notes that CALCRIM No. 460, concerning the crime of attempted sexual penetration, was not given.  During a conference outside the jury's presence, and after all evidence had been taken, the court addressed the instruction:

18

19      THE COURT:  Which brings me to the instruction 460 that has to do with an attempt.  That was submitted by the People as to Count 2,

20      just preliminarily *it is the Court's view that the defendant is either guilty of the offense or not guilty of the offense,* I find no evidence that he attempted to engage in that conduct but failed to do so.

21

22      [Defense counsel], do you wish to be heard?

23      [DEFENSE COUNSEL]:  I didn't ask for that instruction.  I don't think it is supported by the evidence.  Strategically I would prefer it not be given.

24

25      [PROSECUTOR]:  I pulled it because it was listed as a lesser included, but I agree.  I don't think the evidence would support it in either fashion.

26

27      THE COURT:  Thank you.

28 (ECF No. 10-4 at 109 [italics added].)

1    jury's verdict.  The jury believed Lily over petitioner.  In other words, the jury believed petitioner

2    inserted his finger into Lily's vagina, and instructing the jury regarding simple battery would not

3    have changed that outcome.  See Brecht, 507 U.S. at 637.

4           The undersigned agrees with the findings and analysis of the Court of Appeal as it is well-

5    supported by the record and governing law for the reasons given above.  Petitioner has failed to

6    show that the Court of Appeal's rejection of this claim was objectively unreasonable under the

7    governing federal law.  Certainly, the state court's determination was not "so lacking in

8    justification that there was an error well understood and comprehended in existing law beyond

9    any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.

10   VI.  Conclusion

11          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

12   habeas corpus be denied.

13          These findings and recommendations are submitted to the United States District Judge

14   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

15   after being served with these findings and recommendations, any party may file written

16   objections with the court and serve a copy on all parties.  Such a document should be captioned

17   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

18   he shall also address whether a certificate of appealability should issue and, if so, why and as to

19   which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

20   applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

21   § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

22   service of the objections.  The parties are advised that failure to file objections within the

23   specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

24   F.2d 1153 (9th Cir. 1991).

25   Dated:  December 17, 2020

26

27                                                   KENDALL J. NEWMAN
     Oter0381.157                                    UNITED STATES MAGISTRATE JUDGE

28

29